The People of Puerto Rico, Plaintiff and Appellee, *v.*
Juan Bautista Román, Defendant and Appellant.

No. 7347.   Argued March 29, 1939.—Decided April 20, 1939.

*A. Reyes Delgado* and *Pedro Santos Borges* for appellant.   *R. A.
Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Juan Bautista Román was accused by the District Attorney of the District Court of Arecibo as author of a crime of voluntary manslaughter committed as follows:

"The said defendant, Juan Bautista Román, prior to the date on which this information was filed, that is, on September 29, 1936, in the ward Palmas Altas of Barceloneta, P. R., which forms part of the judicial district of Arecibo, P. R., illegally, voluntarily, maliciously and criminally, upon a sudden quarrel, assaulted and battered David Serrano with a revolver, which is a death dealing weapon, with the intention of killing him, and wounding him with a bullet in the abdomen, as a consequence of which he died in the University Hospital of San Juan, P. R., on October 2, 1936."

After the hearing of the case, the jury found the defendant guilty and the court, by its judgment, sentenced him to three years in prison at hard labor.   Feeling aggrieved, he appealed.   He assigns three errors in his brief: in permitting

witness Carmelo González to express his opinion as to whether a certain door could or could not be opened from the outside while locked from the inside; in refusing to give certain instructions to the jury, and in rendering judgment against the weight of the evidence and the law.

Let us examine the first assignment of error. While witness González, a police corporal, was testifying, he stated that when he went to the house of the defendant, he (the defendant) told him that somebody tried to open the door and that he fired without knowing at whom, and that he examined the door and found the lead of a bullet imbedded in the door. He continued as follows:

"Q.—Did you say that you examined the door?—Yes, Sir.

"Q.—Did you see where the bullet hit and the lead imbedded?—Yes, Sir.

"Q.—But did the lead go through the door or did it remain there?—It did not go through, but remained imbedded.

"Q.—How was the door?—When I arrived the door was alone, and it was like this, ajar.

"Q.—Did you examine the hinges?—The upper one was broken, and below, they are doors made of soft wood, it was broken, but I noticed, as it is near the sea, that it had been rusty for a long time.

"Q.—Had the upper part been broken recently?—Yes, Sir.

"Q.—Towards what side did the door open, towards the inside or the outside?—Towards the outside.

"Q.—How was it locked on the inside?—It was barred.

"Q.—Did you examine it closely?—Really I do not remember whether it was barred. I do know that it locked from the inside.

"Q.—Do you recall whether the thing used to lock it was something strong that closed it very well?—The door, yes, because I tried it with a gentleman that was with me and it locked well.

"Q.—Do you think it possible. . .?

"Attorney Reyes Delgado.—I object to what he thinks.

"Judge.—Let us hear the question.

"Q.—Do you think it possible, taking into account the examination and experiments you made on the door, that that door could be opened from the outside while it was locked from the inside?

"Attorney Reyes Delgado.—The jury should withdraw.

"Judge.—The court thinks that is a usual question.

"Attorney Reyes Delgado.—That is asking an opinion from a witness that is not an expert. (He argues.) He may state what he did but not what he believes.

"Judge.—Answer.

"Attorney Reyes. Delgado.—I take an exception.

"Judge.—Whether the door could be opened by pushing it when it was locked?—My opinion, that may be erroneous, is that it could be so opened.

"Q.—From the outside, pulling at it?—No, Sir, from the inside. Opening it.

"Q.—But if that door was locked from the inside, without the upper hinge, broken, would a person from the outside pull at it, and break whatever was inside in order to open it?—Impossible, it cannot be opened.

"Upon being questioned by Attorney Reyes Delgado he testified:

"Q.—Was it a solid door throughout or was it divided in the middle?—It was a solid door.

"Q.—Is it a two section door as these two ones, and the one on that side was broken?—Which one?

"Q.—From that side. Was the hinge broken?—Yes, Sir.

"Q.—Do you know whether any one tried to pull it out?—I don't know. I only know that I found the door on the floor as well as the upper hinge, but the lower one was open.

"Q.—Do you know whether that door closed on the other one or vice versa; in other words, which was the male and which the female? It closed over the other one.

"Q.—It was not the one closing on the other one?—The one that closes over the other one is on this side.

"Q.—And you cannot say for certain whether the door was barred or had a lock?—I can not."

In our opinion no error was committed. They were dealing with a witness with certain knowledge and experience who examined the door and would be considered capable of expressing his opinion when and in the manner asked. In *Crowell* v. *State*, 120 S. W. 897, 902, which was a case of murder, the Court of Criminal Appeals of Texas, confronted with a similar situation, said:

"While the witness Joseph Rinefeldt was on the witness stand, and after describing fully the stairway and doorway into same, he

was asked the question as to whether it would have been possible or impossible for the body of a person weighing 135 pounds to have rolled against the stairway door without knocking it open, to which he answered that a body so rolling against it would have opened it. This was objected to, because not the subject of expert testimony, and the witness was not an expert. We think in questions of weight, strength, and power of resistance, and matter of that sort, it is clearly competent for one cognizant and familiar with the conditions shown to exist to express an opinion as to whether a given weight pressing against a door would have opened it. This witness had shown himself quite familiar with the door. It would have been quite difficult to have developed the resisting power of same, without putting in evidence the statement of the witness in respect to same, or in some such manner as was done to have developed the facts.''

Let us examine the second assignment of error. We have stated that it refers to the instructions given to the jury. What appears from the record is that after the judge finished giving them, the following incident occurred:

''Attorney Reyes Delgado.—I have certain instructions to offer to the court and I request the jury to withdraw before it starts deliberating. And we take an exception to all instructions given and especially to the one relating to reasonable doubt, and we are going to take especifically an exception to the instruction that refers to the deceased's entrance or attempt to enter into the house of the defendant. We are going to request the court to modify or reconsider its instructions as to reasonable doubt and as to the deceased's entrance or attempt to enter into the house of the defendant, and we offer the following text: A person may repel force with force in the defense of his person, property or life against one who openly, or violently or suddenly attempts to commit a given crime, a felony or misdemeanor, or either of them, or to cause great injury to his person, and the danger justifiying defendant's commission of the act charged with may be real or apparent; and the jury need not consider whether defendant was in actual danger, but merely if the circumstances were such as would induce a reasonable man to believe that his person or his property were in danger; and if rationally he might so believe and had sufficient cause therefor, and he did commit the act charged with, even though it should appear that the deceased was unarmed, the jury should acquit the defendant.

"Judge.—As to that request, the court believes that ample instructions have been given and that the jury should be allowed to decide whether the attendant circumstances justified the defendant (*sic*) to enter or entering the house with the intention of assaulting or committing a felony, in that case the defendant should be acquitted, which is the same thing the attorney prays for, although I believe that our instructions are more thorough.

"Attorney Reyes Delgado.—We take an exception on the grounds of *People* v. *Sutton,* 17 P.R.R. 327. Now we are going to request the court to modify its instruction as to reasonable doubt, wording in the maner appearing in Section 236 of the Code of Criminal Procedure, that reads thus: 'A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal.'

"Judge.—The court refuses the instruction because it has given thorough instructions as to reasonable doubt, and believes the court is not bound to follow strictly the words of the statute.

"Attorney Reyes Delgado.—I take an exception."

Recently in the case of *People* v. *Ramírez,* 50 P.R.R. \_\_\_\_, this Court held:

"We are of the opinion that the instructions given by the court covered amply and justly and impartially the legal rule as to the right of self-defense, perfectly adapted to the facts established by the testimony of the eye-witnesses, which we shall examine below in this opinion. The instructions given covered practically all the points suggested by the defense in the instructions requested by them, and denied by the court. Certainly the court refused to give them for fear of confusing and unduly impressing the jury."

14 R. C. L. 751, 8 Cal. Jur. 314 and *People* v. *Martí,* 43 P.R.R. 421, are cited.

And it so happens in this case. The instructions already given covered thoroughly the point and it was not necessary to repeat them in the manner prayed for by the defense. There was no error.

Nor was the third and last error committed. In our opinion the judgment rendered is not against, but amenable to the law.

No issue is raised as to the fact that Serrano died as a result of the shot fired at him by defendant. What is in issue is whether the shot was fired by the accused in defense of his castle, in order to decide whether it was justified in the eyes of the law.

María Serrano, mother of the deceased and a witness for The People, testified that on the night in question, after her son arrived with the defendant to the latter's cafe-bar, she heard the defendant speaking loudly and saw him with a gun in his hand and saw and heard his wife and sister saying to him, what are you going to do? "until he got away from them and fired from his house to the ground." At that moment she did not see her son. "I saw him when he arrived at my house, wounded . . . I eased his belt and he said: 'Oh, mother, with a bullet' . . . he asked for water and said: 'Bless me, mother', and I said: 'What is the matter, my son?' 'Juan Román, coward!' "

And the defendant stated that he was that night with Serrano but returned early and after dining at their store, Serrano left. That at about midnight they heard one of the doors of the house being violently shaked, that he got up, took his revolver and thrusting his hand out from the other door he fired without knowing at whom; that he testified before police officer González when he was arrested and said he had fired two shots; that thereupon he took out one of the empty shells of the revolver and put in a fresh bullet he still had, and that was the reason why the gun appeared to have been fired only once when it was given to policeman González; and that he did so as a defensive measure, fearing other attacks from the family of the deceased; that he fired as soon as he heard they were pulling at the door; that when he fired his family was asleep; that the night was clear because the moon was out; that he and the deceased were friends; that he did not notice whether the door he fired at was on the floor; that nobody has ever tried to break into his store and that he has no enemies in the ward, but he thought they were

going to steal the merchandise from his store; that he fired the shot from the parlor door that does not connect with the store.

The jury decided the conflict against the defendant and found him guilty. Nothing is there to show that it acted with passion, prejudice or partiality, or that it committed manifest error. That aside from the fact that the very testimony of the defendant does not establish a case of defense of castle.

The judgment appealed from must be affirmed.